# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANDREW A. DEMORE**,                    Chapter 7
    Debtor                          Case No. 13-16160-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MAUREEN A. DEMORE,**                   Chapter 7
    Debtor                          Case No. 13-17344-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD LASSMAN, CHAPTER 7 TRUSTEE**
**OF THE ESTATE OF ANDREW A. DEMORE,**
    Plaintiff
v.                                       Adv. P. No. 14-1016

**HSBC BANK USA., N.A.**
**U.S. BANK HOME MORTGAGE and**
**ANDREW A. DEMORE**
    Defendants
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD LASSMAN, CHAPTER 7 TRUSTEE**
**OF THE ESTATE OF MAUREEN A. DEMORE,**
    Plaintiff
v.                                       Adv. P. No. 14-1018

**HSBC BANK USA., N.A.**
**U.S. BANK HOME MORTGAGE and**
**MAUREEN A. DEMORE,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

1

## I. INTRODUCTION

The matters before the Court are 1) the Motions of Defendant, HSBC Bank, USA, N.A. ("HSBC"), for Certification of State Law Question to the Massachusetts Supreme Judicial Court (each, a "Certification Motion" and jointly, the "Certification Motions") filed in each of the above adversary proceedings; and 2) HSBC's Motions to Dismiss, which owing to the allowance of an Assented to Motion to Convert Pending Motion to Dismiss to Motion for Summary Judgment filed in each of the above adversary proceedings, the Court shall treat as Motions for Summary Judgment.[1]  Through its Certification Motions, HSBC seeks an order from this Court certifying to the Massachusetts Supreme Judicial Court the following legal issue:

> Whether a mortgage encumbering registered land, whose certificate of acknowledgment is alleged to be potentially ambiguous regarding whether the execution of the mortgage was the voluntary act of the mortgagors, but which mortgage was accepted by Land Court for registration and is noted on the certificate of title to such registered land, provides constructive notice.

Pursuant to its Summary Judgment Motions, HSBC seeks summary judgment with respect to the complaints filed by Donald Lassman, the Chapter 7 trustee (the "Trustee") of the separate bankruptcy estates of Maureen DeMore ("Mrs. DeMore") and Andrew DeMore ("Mr. DeMore") (jointly, the "Debtors"), through which the Trustee seeks to avoid and preserve for the benefit of the estate, pursuant to 11 U.S.C. §§ 544 and 551, a mortgage because the acknowledgment executed by the Debtors' attorney-in-fact contains, in the

---

[1] The Defendants filed answers to the complaints filed by the Chapter 7 Trustee on the same date that the parties filed the motions to convert the motions to dismiss to motions for summary judgment.

Trustee's view, a material and patent defect.[2]

The Court heard the Motions to Dismiss on September 17, 2014 and took them under advisement.  The Court directed the parties to file supplemental materials to determine whether certification to the Supreme Judicial Court is warranted, or whether summary judgment pursuant to Fed. R. Civ. P. 12(d) would be appropriate.  HSBC filed Motions to Convert the Pending Motions to Dismiss to Motions for Summary Judgment, and the parties filed all supplemental materials, including Joint Statements of Material Undisputed Facts in each adversary proceeding.  Therefore, the Motions to Dismiss, which the Court shall treat as Motions for Summary Judgment are ripe for determination.

## II. PROCEDURAL BACKGROUND

Mr. and Mrs. DeMore filed separate voluntary petitions under Chapter 7 of the Bankruptcy Code on October 22, 2013 and December 27, 2013, respectively.  On his Schedule A - Real Property, Mr. DeMore listed property located at 65 Maryanne Way, North Attleboro, Massachusetts (the "property") with a value of $385,000.  Mrs. DeMore listed the property on Schedule A with a value of $400,000.[3]

On Schedule C - Property Claimed as Exempt, Mr. DeMore claimed the property as exempt in the amount of $500,000 pursuant to the homestead exemption available under the

---

[2] The Trustee originally named U.S. Bank Home Mortgage as a defendant in each adversary proceeding.  He filed a notice of voluntary dismissal with respect to U.S. Bank Home Mortgage in each adversary proceeding.

[3] The Debtors were represented by different counsel in their respective bankruptcy cases.

3

Massachusetts Homestead Act, Mass. Gen. Laws ch. 188, §§ 1 and 14 (the "Homestead").[4]

No party objected to the validity of Mr. DeMore's homestead exemption and the time for

doing so has expired.  *See* Fed. R. Bankr. P. 4003(b)(1).  Mrs. DeMore initially claimed a

homestead exemption in the property in the amount of $125,000 under Mass. Gen. Laws ch.

188, §§ 1 and 2 on Schedule C.  She later amended Schedule C on January 15, 2014, choosing

the federal exemption scheme and claiming a homestead exemption in the amount of $10,000

pursuant to 11 U.S.C. § 522(d)(1).[5]  No party objected to the validity of Mrs. DeMore's

homestead exemption and the time for doing so has expired.

On his Schedule D - Creditors Holding Secured Claims, Mr. DeMore listed "PHH

Mortgage Svc Ctr" and "US Bank Home Mtg." as the holder of a first mortgage on the

property in the amount of $244,900, Citizens Bank as the holder of a "HELOC" on the

property in the amount $134,116, and judicial liens on the property in the approximate

amount of $37,075.  In contrast, on her Schedule D, Mrs. DeMore listed "HSBC Mortgage

Corporation" as the holder of a first mortgage on the property with a secured claim in the

amount of $245,000, Citizens Bank as holder of a second mortgage on the property with a

secured claim in the amount of $130,000,[6] and two judicial liens encumbering the property

---

[4] According to the Complaint, Mr. DeMore recorded with the Land Court a Declaration of Homestead which was registered as Document No. 61108 and noted on the certificate of title to the property.

[5] Because Mr. and Mrs. DeMore filed their Chapter 7 cases separately and their cases are not jointly administered, the provisions of 11 U.S.C. § 522(b)(1) relating to exemptions claimed by spouses are inapplicable.

[6] RBS Citizens, N.A. moved for and obtained relief from the automatic stay with respect to its home equity line of credit agreement in each of the Debtor's bankruptcy

in the approximate total amount of $38,000.

On May 6, 2014, HSBC timely filed a proof of claim in Mrs. DeMore's case in the amount of $254,697. It did not file a proof of claim in Mr. DeMore's case.

The Trustee commenced the instant adversary proceedings by filing a complaint against Mr. DeMore and HSBC on January 21, 2014, and a separate complaint against Mrs. DeMore and HSBC on January 22, 2014 (jointly, the "Complaints"). He set forth two counts in each Complaint, asserting the same claims for relief. He alleged that the notarized acknowledgment in a mortgage executed on April 27, 2004 in favor of HSBC Mortgage Corporation (USA) (the "Mortgage") is materially and patently defective under Massachusetts law because it fails to unequivocally and unambiguously identify who appeared in front of the notary, and because it fails to unequivocally express that the execution of the Mortgage was the free act and deed of the Debtors. Through his status as a bona fide purchaser of the property, the Trustee also asserted that he may avoid the Mortgage pursuant to 11 U.S.C. § 544(a)(3), and he sought a determination, pursuant to 11 U.S.C. § 551, that the Mortgage is preserved for the benefit of the Debtors' bankruptcy estates, senior to the Homestead and the junior liens.[7]

Following the filing of the Complaints, HSBC and the Trustee filed several motions to extend the time for HSBC to file its answers. On May 23, 2014, HSBC filed the

cases on March 31, 2014.

[7] In the Complaint filed in Mrs. DeMore's adversary proceeding, the Trustee incorrectly alleged that Mrs. DeMore had claimed a homestead exemption in the property in the amount of $125,000.

Certification Motions in the adversary proceedings pursuant to Rule 1:03 of the Rules of the Supreme Judicial Court. In the Certification Motions, HSBC maintained that, although the bankruptcy courts of this district, as well as the United States Bankruptcy Appellate Panel for the First Circuit, have invalidated mortgages containing materially defective acknowledgments, those mortgages were recorded in the recorded land system. In its view, certification to the Supreme Judicial Court is warranted because the notice provided by a mortgage containing an allegedly ambiguous acknowledgment noted on the certificate of title of *registered land* appears to be an issue of first impression for which there is no controlling precedent in the decisions of the Supreme Judicial Court. The Trustee opposes the Certification Motions, arguing that certification is inappropriate in this case because state law is sufficiently clear to allow this Court to predict how the Supreme Judicial Court would rule on this issue.

On May 23, 2014, HSBC filed motions in both adversary proceedings to extend the time to file answers or otherwise respond to the Complaints until either the Supreme Judicial Court ruled on the question presented in the Certification Motions; or until this Court denied the Certification Motions. The Court allowed the motions to extend time on May 30, 2014. On July 8, 2014, however, the Court determined that it was unable to rule on the Certification Motions without first determining whether the facts alleged in the Complaints were in dispute. Accordingly, on that date, the Court issued an order in Mrs. DeMore's adversary proceeding requiring HSBC to file a responsive pleading to the Complaint within 30 days pursuant to Fed. R. Bankr. P. 7012. HSBC filed Motions to Dismiss in both adversary

6

proceedings on August 7, 2014. The Trustee opposed the Motions to Dismiss, and the parties filed supplementary memoranda in support of their positions.

The Court heard the Certification Motion[8] and the Motions to Dismiss on September 17, 2014, observing that it was appropriate to treat HSBC's Motions to Dismiss as motions for summary judgment pursuant to Fed. R. Civ. P. 12(d). The Court directed the parties to file supplemental materials to support their positions and took the Certification Motions and the Motions to Dismiss under advisement. The parties complied with the Court's order and filed additional materials on September 26, 2014. Thereafter, on October 31, 2014, HSBC filed answers to both Complaints. Also, on October 31, 2014, HSBC filed assented-to motions in each adversary proceeding to convert the pending Motions to Dismiss to motions for summary judgment. As noted above, the Court allowed the motions on November 4, 2014, and the parties filed a Joint Statement of Material Undisputed Facts and additional briefs.[9]

**III. FACTS**

On February 23, 1994, the Debtors acquired the property as tenants by the entirety. The deed transferring the property to the Debtors was registered with the Northern Bristol County Registry of Deeds of the Land Court (the "Land Court") on March 14, 1994 as a

---

[8] Due to administrative error, the Certification Motion filed by HSBC in Mr. DeMore's adversary proceeding was not set for hearing, although it was presented and argued by counsel, and all parties were heard with respect to it.

[9] In mid-December 2014 and again in late January 2015, the Trustee sought an extension of time to file his supplemental brief as the parties were engaged in settlement discussions.

"Transfer Certificate of Title," with a Document No. 48615 and a Certificate No. 10330, in

Book 50, Page 71 (the "Certificate of Title").   On April 20, 2004, Mrs. DeMore and Mr.

DeMore each executed separate Limited Powers of Attorney to John Molloy ("Molloy")

which were registered with the Land Court on May 5, 2004 as Document Nos. 78077 and

78079, respectively, and noted on a Memorandum of Encumbrances which referenced the

Certificate of Title Number and the book and page numbers.   Each Power of Attorney

contained an acknowledgment which was signed by a notary public, Patricia A. McNielly,

on April 20, 2004.  The acknowledgment contained in Mrs. DeMore's Power of Attorney

provided the  following:

> On this 20th day of April, 2004, before me, the undersigned notary public, personally appeared MAUREEN DEMORE, proved to me through satisfactory evidence of identification, which were DRIVER'S LICENSES [sic] ISSUED BY THE COMMONWEALTH OF MASSACHUSETTS, to be the person whose name was on the proceeding attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.
>
>                    /s/           Patricia A. McNielly
>                    , Notary Public
>                    My commission expires: 12-31-04

Other than the name "Maureen DeMore" and the pronoun "she," the acknowledgment

contained in Mr. DeMore's Power of Attorney was identical to that of Mrs. DeMore.  As set

forth in the acknowledgment, the notary relied on "DRIVER'S LICENSES" for evidence of

identification of the respective signatories although there was just one signatory on each

Power of Attorney who, presumably, would have had only one valid driver's license issued

by the Commonwealth of Massachusetts.

8

On April 27, 2004, the Debtors entered into a financing transaction under which Molloy, on the Debtors' behalf, executed the Mortgage on the property in favor of HSBC Mortgage Corporation (USA)  securing payment of a promissory note of the same date to HSBC Mortgage Corporation (USA) in the original principal amount of $244,900.00.  The Mortgage was registered with the Land Court eight days later, on May 5, 2004, as Document No. 78082 and noted on the Certificate of Title.

Molloy signed each of the Debtor's names on the Mortgage with the following notation: "by John Molloy as attorney in fact under power of attorney recorded in Bristol ROD Bk___ page ____[.]" The Mortgage contained an acknowledgment which provided the following:

> On this *27th* day of April, 2004, before me, the undersigned notary public personally appeared *Andrew DeMore and Maureen DeMore by their attorney-in-fact, John G. Molloy under Power of Attorney recorded herewith* proved to me through satisfactory evidence of identification, which were *drivers licenses* [sic] to be the person whose name was on the proceeding attached document, and acknowledged to me that he/she signed it voluntarily and for its stated purpose.[10]

/s/ Melissa Henderson
Melissa Henderson , Notary Public
My commission expires: 08-27-10

The Mortgage was subsequently assigned by HSBC Mortgage Corporation (USA) to HSBC which is the current mortgagee.  The Assignment was registered with the Land Court and noted on the Certificate of Title on September 26, 2011 as Document No. 95220.

---

[10] The italicized portions of the acknowledgment indicate handwritten insertions into the otherwise typed text.

9

## IV. POSITIONS OF THE PARTIES

A. <u>The Trustee</u>

The Trustee contends that certification is not warranted in this case because "state law is sufficiently clear to allow this Court to predict how the Massachusetts Supreme Judicial Court would resolve the question of whether a defectively acknowledged mortgage registered in the Land Court would provide notice to a bona fide purchaser." In support of his argument, he notes that a mortgage must be duly acknowledged pursuant to Mass. Gen. Laws ch. 183, § 29 prior to registration in the Land Court, citing, <u>Zona v. Zona</u>, No. 22902-S-2005006-001, 2008 WL 97425 (Mass. Land Ct. 2014). With respect to Mass. Gen. Laws ch. 185, § 46, which provides that "[e]very plaintiff receiving a certificate of title in pursuance of a judgment of registration, and every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate [with exceptions not applicable here]" and the decision in <u>Jackson v. Knott</u>, 418 Mass. 704, 710, 640 N.E.2d 109 (1994), the Trustee argues that bona fide purchasers are "'obligated to review only documentation within the registration system because to require a purchaser to investigate facts not documented within that system would be directly contrary to the purposes of the Land Registration Act.'" He adds that in <u>Graves v. Graves</u>, 72 Mass. 391, 392-93 (1856), the Supreme Judicial Court held that an "instrument of defeasance, not being acknowledged, was improvidently admitted to registration, and the record does not operate as constructive notice[.]" Accordingly, in his view, "a defectively acknowledged mortgage that is improvidently registered and documented on the certificate

10

of title cannot provide constructive notice of itself." In addition, citing Mass. Gen. Laws ch.

185, § 58, he maintains that "if a mortgage would not otherwise provide notice if recorded

in the registry of deeds, it will not provide notice if registered."

Relying on the decision in <u>Mbazira v. Ocwen Loan Serv., LLC (In re Mbazira)</u>, 518

B.R. 11 (Bankr. D. Mass. 2014) (<u>Mbazira I</u>), the Trustee rejects HSBC's arguments, set forth

in its Reply to his brief, namely that the absence of title curative statutes in the registered

land system supports its position that the act of registration constitutes constructive notice,

citing <u>Feinzig v. Ficksman</u>, 42 Mass. App. Ct. 113, 674 N.E.2d 1329, 1332 (1997), *review, denied,*

424 Mass. 1107 (1977).  Specifically, the Trustee asserts that HSBC's argument that the

absence of provisions like those set forth in Mass. Gen. Laws ch. 184, § 24, which applies to

recorded land, is evidence that the legislature intended for  certificates of title to provide

constructive notice of encumbrances to third parties is unmeritorious.  Noting that § 24

provides that recorded instruments conveying title to real property that contain certain

defects, irregularities or omissions are deemed to be effective after ten years if a suit has not

been commenced on account of the defect, the Trustee asserts that HSBC's argument that

there is no corollary to § 24 in the registered land system is incorrect. He observes that the

registration system also includes title curative procedures, including those set forth in Mass.

Gen. Laws ch. 185, § 114, which provides, *inter alia*, that a registered owner or other person

in interest may apply by motion to the court to correct  "any error or omission . . . made in

entering a certificate or any memorandum thereon," and gives the court the power to "order

the entry of a new certificate, the entry or cancellation of a memorandum upon a certificate,

or grant any other relief upon such terms . . . as it may consider proper." In the Trustee's

view, the difference in title curative procedures in § 24 and § 114 do not permit an inference

that the legislature intended to charge third parties with constructive notice of a mortgage

containing a materially defective acknowledgment simply because it appears on the

certificate of title. He concludes that this Court should follow Mbazira I, which is directly

on point with the issue of constructive notice in this case, adding "Judge Hillman's sound

and thorough analysis applies equally to the issue of constructive notice" raised in HSBC's

submissions.

   B. HSBC

   HSBC recognizes that the nature of the purportedly faulty acknowledgment is similar

to the alleged ambiguity considered by the United States Bankruptcy Appellate Panel for the

First Circuit in Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392 (B.A.P. 1st Cir.

2013). It, however, distinguishes that case, as well as Agin v. Mortg. Elec. Registration Sys.

(In re Giroux), No. 08-14708, 2009 WL 1458173 (Bankr. D. Mass. May 21, 2009), aff'd, Mortg.

Elec Registration Sys. v. Agin, No. 09-CV-10988, 2009 WL 3834002 (D. Mass. Nov. 17, 2009),

and  Agin v. Mortg. Elec. Registration Sys. (In re Bower), No. 10-10993, 2010 WL 4023396

(Bankr. D. Mass. Oct. 13, 2010), because those decisions did not involve registered land.  It

adds that the Mortgage executed by Molloy was accepted by the Land Court for registration

and was noted on the Certificate of Title.  HSBC also recognizes that under Mass. Gen. Laws

ch. 183, §§ 4, 29, and 30, mortgages encumbering recorded land, as opposed to registered

land, must be recorded with the appropriate registry of deeds and duly acknowledged by

12

the mortgagor to be effective against third parties.  HSBC asserts that the relevant statutes and case law for registered land must be strictly construed such that parties are charged with constructive notice of any encumbrances noted on the certificate of title.

Citing Mass. Gen. Laws ch. 185, §§ 46, 57 and 58 and seeking to certify the question to the Supreme Judicial Court, HSBC contends that it is an open issue as to whether mortgages accepted for registration and noted on the certificate of title of registered land provide constructive notice, regardless of whether such mortgages contain arguably defective acknowledgments.  Highlighting the purpose of registered land systems to promote certainty of title and citing Goldsmith v. Woodman (In re Woodman), 497 B.R. 668, 673 (Bankr. D. Mass. 2013) and Hon. Gordon H. Piper & Diane C. Tillotson, REAL ESTATE TITLE PRACTICE IN MASSACHUSETTS, § 15.2.2 (Kathleen M. Mitchell & Peter Wittenborg eds., 2d ed. 2010), it asserts that anyone wishing to examine the state of title to registered land need look no further than the certificate of title.  Quoting In re Woodman, 497 B.R. at 673, and citing both Doyle v. Comm., 444 Mass. 686, 693 (2005), and Jackson v. Knott, 418 Mass. 704, 710 (1994), it argues that "[p]urchasers of registered land should be able to look at the certificate of title to determine encumbrances without having to search for encumbrances not listed therein." As a result, according to HSBC, the Trustee had constructive notice of the Mortgage and cannot rely upon 11 U.S.C. § 544 to avoid it. Quoting Bailey v. Wells Fargo Bank, N.A. (In re Bailey), 468 B.R. 464, 477 n.19 (Bankr. D. Mass. 2012), it emphasizes that "[r]egistered land has gone through an adjudication process in order to quiet title, and 'the Commonwealth guarantees and insures the title to land that

13

is registered.'" It maintains that pursuant to Mass. Gen. Laws ch. 185, § 46 "[t]he 'conclusiveness' of the certificate of title on subsequent purchasers of registered land is fundamentally different from the recording system related to recorded land." It adds that the registered land system employs a different standard of constructive notice for purposes of Mass. Gen. Laws ch. 185, § 46, stating that third parties reviewing the Certificate of Title would see the Mortgage noted and, with that knowledge, would be required to inquire further.

HSBC distinguishes the decision in Zona v. Zona, No. 22902-S-2005-06-001, 2008 WL 97425 (Mass. Land Ct. Jan. 9, 2008), because that case dealt with a deed, allegedly procured by fraud, which failed to include an acknowledgment of the holder of a life estate. HSBC points out that the decision contains no discussion or analysis of whether parties are on "constructive notice" of the information contained on a certificate of title.

HSBC also argues that, as a "title theory" state, the act of registration of a mortgage is the operative act which transfers title from the mortgagor to the mortgagee. Citing Mass. Gen. Laws ch. 185, § 67, and Malaguti v. Rosen, 262 Mass. 555, 567 (1928) ("registration is the act which passes title and is the act of the court."), it maintains that as soon as the Mortgage was accepted for registration, "the Debtors intended title grant to HSBC Mortgage Corp. took effect."

HSBC also argues that the certificate of acknowledgment contained in the Mortgage "is sufficiently clear that the mortgagors voluntarily signed the mortgage through their power of attorney, and, thus, the mortgage satisfies the requirement of Massachusetts law."

14

It concludes that the Mortgage contains no "patent and material defect," and specifically satisfies the requirements of Mass Gen. Laws ch. 183, §§ 29 and 30 because it is in substantially the same form as the form set forth in the Revised Executive Order No. 455 (04-04). In this regard, HSBC argues that In re Kelley was wrongly decided by the bankruptcy appellate panel, particularly the panel's conclusion that the acknowledgment's ambiguity was a patent and material defect. HSBC urges this Court to reach the same conclusion as the bankruptcy court in Kelley as the facts in Kelley are distinguishable from those in Giroux and Bower.

In its Supplemental Brief, HSBC asserts that, as a matter of state law, subsequent purchasers are charged with constructive notice of a mortgage if there are facts contained in other properly-registered documents noted on the certificate of title. In other words, in its view, properly registered documents that reference the Mortgage, such as the Assignment, would prompt a reasonable purchaser to search for the existence of the Mortgage elsewhere. Citing In re Woodman, 497 B.R. at 674, it maintains that third parties have constructive notice of unregistered encumbrances if there are facts on the certificate of title, reviewed in its entirety, that would prompt a further inquiry or point to the existence of the Mortgage. It references the Limited Powers of Attorney executed by the Debtors on April 20, 2004 and registered on May 5, 2004, and the Assignment that was registered on September 26, 2011. The Assignment referenced not only the identity of the borrowers, but the date of the execution of the Mortgage, the date of the registration of the Mortgage, the Mortgage registration number, the Certificate of Title number, the loan amount, the property

address, the original mortgagee, and the assignee.

HSBC highlights the decision in <u>Jackson v. Knott</u>, 418 Mass. 704, 711 (1994), stating

that the Supreme Judicial Court noted two exceptions to the good faith purchaser rule set

forth in Mass. Gen. Laws ch. 185, § 46, namely "(1) if there were facts described on his

certificate of title which would prompt a reasonable purchaser to investigate further other

certificates of title, documents, or plans in the registration system; or (2) if the purchaser has

actual knowledge of a prior unregistered interest."  In view of the Trustee's avoidance

powers under § 544(a) which are "without regard to any knowledge," HSBC, citing <u>Dwyer</u>

<u>v. Rockland Trust Co. (In re Mammola</u>), 474 B.R. 23, 35 (Bankr. D. Mass. 2012), recognizes

that the second exception is inapplicable.  It argues, however, that a hypothetical purchaser

pursuant to § 554 has constructive notice if he is charged with "notice by a statute or rule of

law" and that the first exception provides the "rule of law."

## V. DISCUSSION

A. <u>Summary Judgment Standard</u>

The summary judgment standard requires little explication in the context of this

adversary proceeding, particularly where the material facts are not in dispute.  In <u>Weiss v.</u>

<u>Wells Fargo Bank, N.A. (In re Kelley</u>), 498 B.R. 392 (B.A.P. 1st Cir. 2013), the United States

Bankruptcy Appellate Panel of the First Circuit stated:

> "In bankruptcy, summary judgment is governed in the first instance by
> Bankruptcy Rule 7056." <u>Desmond v. Varrasso (In re Varrasso</u>), 37 F.3d 760, 762
> (1st Cir. 1994). "By its express terms, the rule incorporates into bankruptcy
> practice the standards of Rule 56 of the Federal Rules of Civil Procedure." <u>Id.</u>;
> *see also* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. "It is apodictic that summary
> judgment should be bestowed only when no genuine issue of material fact

16

exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." In re Varrasso, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In re Kelley, 498 B.R. at 397 (footnote omitted). *See also* Lowell Dev. and Fin. Corp. v. Winter

Hill Bank, FSB (In re Natale), 508 B.R. 790, 799–800 (Bankr. D. Mass. 2014).

   B. Applicable Law

      1. Section 544(a)

   By virtue of 11 U.S.C. §§ 550 and 551, a debtor's bankruptcy estate includes any

interest in property that the trustee recovers or preserves for the benefit of the estate,

including property recovered from the exercise of his powers under § 544(a).[11] *See* 11 U.S.C.

§§ 554, 545, 547, 548, 549 and 553(b), Section 544(a), known as the "strong arm" clause,

---

   [11] Section 544(a)(3) provides:

   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—. . .

      (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

provides a trustee with "rights and powers," including "'the power to avoid a transfer by the debtor of an unperfected security interest in real property to the same extent a bona fide purchaser could avoid the transfer, regardless of any actual knowledge of the trustee.'" <u>In re Kelley</u>, 498 B.R. at 397 (quoting <u>DeGiacomo v. CitiMortgage, Inc. (In re Nistad)</u>, No. 10-17543, 2012 WL 272750, at *3 (Bankr. D. Mass. Jan. 30, 2012)).  Although a trustee's avoiding power is not subject to any actual knowledge that the trustee may possess, it is subject to constructive knowledge.  <u>Kelley</u>, 398 at 397 (citations omitted).  The First Circuit recently summarized the law relative to §§ 544 and 551 as follows:

> Where a creditor has an unperfected lien on a debtor's property, the Bankruptcy Code empowers a trustee to avoid and preserve the lien for the benefit of the estate. The trustee exercises this power through two strong-arm provisions. First, the trustee's right of avoidance under 11 U.S.C. § 544 "vests the trustee with the powers of a bona fide purchaser of real property for value, and allows the trustee to invalidate unperfected security interests." <u>In re Sullivan</u>, 387 B.R. 353, 357 (1st Cir. BAP 2008). Second, his right of preservation under 11 U.S.C. § 551 automatically preserves the benefit of the avoided interest for the estate by "put[ting] the estate in the shoes of the creditor whose lien is avoided." <u>In re Carvell</u>, 222 B.R. 178, 180 (1st Cir. BAP 1998). Together, these provisions benefit the unsecured creditors by allowing the trustee to eliminate unperfected liens on a debtor's property and subsequently to apply the value represented by those liens to the general estate, bypassing any junior lienholders. *See* <u>In re French</u>, 440 F.3d 145, 154 (4th Cir. 2006) ("[T]he Code's avoidance provisions protect creditors by preserving the bankruptcy estate against illegitimate depletions."); <u>In re Nistad</u>, Bankr. No. 10–17453, 2012 WL 272750, at *5 (Bankr. D. Mass. Jan. 30, 2012) ("The purpose of 11 U.S.C. § 551 is to allow a trustee to preserve the avoided interest for the estate so that junior interest holders do not benefit from the avoidance to the detriment of the estate and its creditors.").

<u>DeGiacomo v. Traverse (In re Traverse)</u>, 753 F.3d 19, 26 (1st Cir. 2014), *cert. denied,* __ U.S. __, 132 S.Ct. 459 (2014).

As this Court observed in <u>Dwyer v. Rockland Trust Co. (In re Mammola)</u>, 474 B.R. 23

(Bankr. D. Mass. 2012), "while the Bankruptcy Code provides that the trustee shall enjoy the rights and powers of a bona fide purchaser, those rights and powers are defined by the law of the state where the property is located; in this case the law of Massachusetts." Id. (citing Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); Stern v. Cont'l Assurance Co. (In re Ryan), 80 B.R. 264, 266 (D. Mass. 1987), aff'd, 851 F.2d 502 (1st Cir.1988) (the rights and powers of a bona fide purchaser of real property are determined by the law of the state where the property is located).  In this case, the issue of whether the Trustee had constructive notice of the Mortgage by virtue of the Land Court registration system is central to the resolution of HSBC's summary judgment motion.  In In re Ryan, the United States Court of Appeals for the First Circuit discussed the various types of notice, in addition to actual notice, concluding that actual notice does not bind the trustee due to the language ("without regard to any knowledge of the trustee . . .").  The Court of Appeals  observed:

> "Notice" is sometimes broken down into various types: constructive, actual, record, implied, imputed, inquiry, etc. The classifications of notice employed in Vermont case law and in many of the treatises are often confusing and seemingly contradictory. *See* 5 H. Tiffany, Law of Real Property § 1284 (B. Jones ed. 1939) (hereinafter Tiffany's Real Property) (noting that "the cases and textbooks are absolutely lacking in harmony"). A helpful formulation, however, appears in Tiffany's Real Property. Separating notice into two main types, actual and constructive, the treatise continues,
>
>> It would seem that one might properly be said to have actual notice when he has information in regard to a fact, or information as to circumstances an investigation of which would lead him to information of such fact, while he might be said to have *constructive notice* when he is charged with notice by a statute or rule of law, irrespective of any information which he might have, actual notice thus involving a mental operation on the person sought to be charged, and constructive notice being independent of any mental operation on his part.

In re Ryan, 851 F.3d at 506 (citing 5 Tiffany's Real Property § 1284, at 50) (emphasis added).

The court added: "Thus 'constructive notice' is not really 'notice,' as that word is commonly

used, at all. Instead, constructive notice is a positive rule of state law that permits the prior

purchaser to gain priority over a latter purchaser, regardless of whether the latter purchaser

really knows of the prior purchase." Id. Concluding that "if a deed is properly recorded,

all future purchasers have constructive knowledge of the deed," id. (citing 4 American Law

of Property § 17.17), the court stated that "inquiry notice" "is a type of notice separate from

'actual' or 'constructive' notice," adding "it is a corollary of both types." Id. at 507.

2. Case Law and Analysis

This Court does not write on a clean slate. Several federal courts in the District of

Massachusetts, as well as the United States Bankruptcy Appellate Panel for the First Circuit

have addressed issues arising from defective acknowledgments that have been accepted for

recording, see, e.g., Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392 (B.A.P. 1st

Cir. 2013); DeGiacomo v. CitiMortgage, Inc. (In re Nistad), No. 10-17435-WCH,  2012 WL

272750 (Bankr. D. Mass. Jan. 30, 2012); Agin v. Mortg. Elec. Registration Sys. (In re Bower),

No. 10–10993–WCH, 2010 WL 4023396 (Bankr. D. Mass. Oct. 13, 2010); and Agin v. Mortg.

Elec. Registration Sys. (In re Giroux), No. 08–14708, 2009 WL 1458173 (Bankr. D. Mass. May

21, 2009) aff'd, Mortg. Elec. Registration Sys. v. Agin, No. 09–CV–10988, 2009 WL 3834002 (D.

Mass. Nov. 17, 2009), and, in the cases of Mbazira v. Ocwen Loan Serv., LLC (In re Mbazira),

518 B.R. 11 (Bankr. D. Mass. 2014) (Mbazira I), and Mbazira v. Ocwen Loan Serv., LLC (In

re Mbazira), No. 13-16586-WCH, Adv. P. No. 14-1055, 2015 WL 1543908 (Bankr. D. Mass.

Mar. 31, 2015) (Mbazira II), accepted for registration in the Land Court.[12]   Indeed, the

decisions in In re Kelley, 498 B.R. 392 (B.A.P. 1st Cir. 2013), Mbazira I, as well as Mbazira II

provide guidance for analyzing the issues raised by the parties and lead this Court to

conclude that certification of the issue posed by HSBC to the Supreme Judicial Court is

unwarranted.   Nevertheless, this Court recognizes that it must predict what the Supreme

Judicial Court would hold with respect to the issue presented.  See In re Miller, 113 B.R. 98,

101 (Bankr. D. Mass. 1990) ("When the highest court has not addressed the issue, the

Bankruptcy Court should not regard lower court rulings on the issue as dispositive. . . . [I]t

should attempt to predict what the highest court would do and to that end should accord

proper regard to decisions of other courts of the state.").

Putting aside for the moment the issue raised by the differences between recorded

---

[12] As noted by the court in In re Bailey, 468 B.R. 464 (Bankr. D. Mass. 2012),

In Massachusetts, real property may be either registered or unregistered
(recorded) land. Real estate in Massachusetts primarily consists of
unregistered land, which is conveyed by the delivery of a deed. 28 Mass.
Prac., Real Estate Law § 4.59. Registered land is not recorded in the same
manner as other real estate, but is governed by Massachusetts statutes
codifying a version of what is commonly referred to as a "Torrens System"
for the registration of land titles. See, e.g. The Torrens System, 25 Law. &
Banker. Cent. L.J. 226 (1932). Registered land has gone through an
adjudication process in order to quiet title, and "the Commonwealth
guarantees and insures the title to land that is registered." 28 Mass. Prac.,
Real Estate Law § 22.1. A certificate of title in registered property is stored
on the "registered land side of the registry of deeds," 28 Mass. Prac., Real
Estate Law § 31A.1, and may be altered only through an action (like the
S–Petition referred to here) brought in the Land Court, see MGL ch. 185 §
114.

468 B.R. at 477 n.19.

and registered land, the acknowledgment in the instant case is virtually indistinguishable

from the acknowledgment considered by the panel in Kelley.[13] In Kelley, the panel reviewed

a number of bankruptcy court decisions, the decision of the Supreme Judicial Court in

McOuatt v. McOuatt, 320 Mass. 410, 69 N.E.2d 806, 810 (1946) ("An acknowledgment is the

formal statement of the grantor to the official authorized to take the acknowledgment that

the execution of the instrument was his free act and deed."), and the provisions of Mass.

---

[13] In Kelley, the panel set forth the following with respect to the acknowledgment:

Obringer signed the Mortgage for Shawn as follows: "Shawn G. Kelley by
Shannon Obringer as attorney in fact." She executed the Mortgage on
behalf of Annemarie similarly: "Annemarie Kelley by Shannon Obringer as
attorney in fact."

The acknowledgment, which was affixed to the Mortgage immediately
following and on the same page as the Debtors' proxy signatures, recites:

COMMONWEALTH OF MASSACHUSETTS, Pennsylvania,
Allegheny County ss:

On this 11 day of June 2007, before me, the undersigned
notary public, personally appeared Shawn G. Kelley and
Annemarie Kelley by Shannon Obringer as Attorney in Fact
proved to me through satisfactory evidence of identification
which was/were [left blank] to be the person(s) whose
name(s) is/are signed on the preceding document, and
acknowledged to me that he/she/they signed it voluntarily
for its stated purpose.
My Commission Expires: 10.4.09

/s/ Magda Esposito
Notary Public
(Seal)

498 B.R. at 394.

Gen. Laws ch. 183, §§ 29 and 30.   In addition, the panel analyzed the forms of

acknowledgment in use, namely Form 14, Mass. Gen. Laws ch. 183, App., Form (14), and the

form set forth in Revised Executive Order No. 455 (04-05), promulgated by the Governor of

the Commonwealth, which was employed by the parties in <u>Kelley</u> and used by the notary

in the instant case.   The panel observed:

> Revised Executive Order No. 455 (04–04) § 5(d). Unlike Form (14), the
> Executive Order form does not clearly express that the voluntariness of the
> execution relates to the principal when the execution is performed by an
> individual acting in a representative capacity. This failure reflects the danger
> of attempting to craft a one-size-fits-all acknowledgment form. In any event,
> Form (14) supercedes the Executive Order form. *See* Revised Executive Order
> No. 455 § 1(c) (stating "[n]othing in this Executive Order supercedes the
> provisions of any court rule, including court forms, Massachusetts General
> Law, including but not limited to, chapter 183, section 42 or the forms set forth
> in the appendix thereto").

<u>Kelley</u>, 498 B.R. at 399 n.9.   In reviewing the acknowledgment and noting that the parties did

not use Form (14), the panel indicated that it was unpersuaded by two of the trustee's

arguments, namely that the language relating to the appearance of the debtors through their

attorney in fact was confusing and that the notary's failure to fill in the blank provided for

specifying the evidence presented to the notary was a "fatal flaw."   498 B.R. at 400.[14]

Nevertheless, the panel determined the following:

> We agree with the Trustee's . . . argument, . . . namely that the foregoing
> language  [set forth in footnote 13 of this decision] fails to unequivocally
> express that the execution of the Mortgage was the free act and deed of the
> principals, i.e., the Debtors, and that this flaw is, indeed, fatal. Here, the
> preprinted form utilized by the notary combined with her failure to attend to
> the blank space and the inapplicable verbiage creates ambiguity concerning
> whether the execution of the Mortgage was the voluntary act of the Debtors.

---

[14] In the instant case, the notary referenced "drivers licenses,"

23

Although the acknowledgment contains a recitation that the Mortgage was signed "voluntarily for its stated purpose," *we are left to speculate whether the voluntariness relates to the principals (the Debtors) or to the attorney-in-fact* (Obringer). Wells Fargo's assertion that the acknowledgment was clearly Obringer's free act and deed is not only unsupported by the language of this acknowledgment, but, more importantly, misapprehends the essential requirement for a valid acknowledgment of an individual acting in a representative capacity: namely, that the attorney must acknowledge that he executed the instrument as the free act and deed of the grantor. Moreover, a review of the language of this acknowledgment does not justify a conclusion that Obringer ever said anything to the one who made out the certificate of acknowledgment to indicate that the Mortgage was the voluntary act of the Debtors.

We therefore conclude that *the acknowledgment is materially and patently defective under Massachusetts law, such that it is incapable of providing constructive notice to a subsequent purchaser for value.* To conclude otherwise would undermine the acknowledgment's very purpose. Thus, the bankruptcy court erred in denying the Trustee's motion for summary judgment on his complaint to avoid the Mortgage pursuant to his § 544 strong arm powers and in granting Wells Fargo's cross-motion for summary judgment.

498 B.R. at 400-01 (emphasis supplied).

In view of the decision in <u>Kelley</u>, this Court concludes that the acknowledgment utilized in the Mortgage was defective because it contains the same ambiguity identified by the panel in <u>Kelley</u>. Based upon the ambiguous language in the acknowledgment it is unclear whether the Mortgage was signed "voluntarily and for its stated purpose" by Molloy, or by Malloy under his power of attorney. Indeed, the language in the acknowledgment is unclear as it is capable of two different interpretations as to who personally appeared before the notary, either Malloy or the Debtors. Thus, if the property were not registered, this Court's inquiry could cease.

The question in these adversary proceedings, however, is whether the registration of the property and the appearance of the Mortgage and the Assignment on the Memoranda

24

of Encumbrances accompanying the Certificate of Title compels a result that is different than

the result for recorded land. To answer the question, it is helpful to first understand the

purpose and process for registration of land and subsequent procedures relative to

mortgages and foreclosures. The Torrens System of land registration is "designed to make

title to land 'certain and indefeasible.'" Hon. Gordon H. Piper & Diane C. Tillotson, REAL

ESTATE TITLE PRACTICE IN MASSACHUSETTS, § 15.2.1 (2013)(www.westlaw.com/ RETITLE MA-

CLE at § 15.2.1 (hereinafter, "REAL ESTATE TITLE PRACTICE IN MASSACHUSETTS"). A property

owner wishing to register land must file a complaint for registration in the Land Court. Id.

at § 15.2.4. Section 26 of Mass. Gen. Laws ch. 185 authorizes "persons who claim, singly or

collectively, to own the legal estate or easements or rights in land held and possessed in fee

simple" to file the complaint. Mass. Gen. Laws ch. 185, § 26. "The complaint must be filed

with, among other things, a plan of the land that is the subject of the registration complaint."

REAL ESTATE TITLE PRACTICE IN MASSACHUSETTS at § 15.2.4 (citing Mass. Gen. Laws ch. 185,

§ 33). The Land Court has published a form of complaint for registration containing required

information. *See generally* Mass. Gen. Laws ch. 185, § 28. "'Immediately after' the filing of

a complaint for registration, the Land Court refers the matter to a Land Court title

examiner." REAL ESTATE TITLE PRACTICE IN MASSACHUSETTS at § 15.2.4 (citing Mass. Gen.

Laws. ch. 185, § 37). The examiner searches the title and investigates "'all facts stated in the

complaint, or otherwise brought to his notice' and files a report, 'concluding with a

certificate of his opinion on the title.'" Id. Notice is then published of the filing of the

complaint which notice is required to contain specific and detailed information. "If no one

25

appears and answers on or before the return day, the court may order that a general default be recorded and may enter judgment 'confirming title of the plaintiff and ordering registration thereof.'" Id. (citing Mass. Gen. Laws ch. 185, § 42).  If title is contested, the matter may proceed to trial.  Id.[15]

As the court in Mbazira I noted, "[r]egistration of a mortgage or other encumbrance, does not trigger a new adjudication of the status of title."  518 B.R. at 20-21.  Rather, a Memorandum of Encumbrances is prepared, unless there is a dispute as to the memorandum to be made. See Mass. Gen. Laws ch. 185, §§ 60 and 68.  Thus, the Memorandum of Encumbrances prepared for the property in the instant cases did not involve the filing of a complaint, the notice procedures attendant to the filing of a complaint, or other protections afforded with respect to the initial registration of the property.  An understanding of those differences also is helpful in determining the effect of the decisions of the state courts, cited by the parties and referenced below, with respect to easements and other encumbrances affecting the metes and bounds descriptions of properties at the time of registration, as opposed to the enforceability of mortgages. Compare Jackson v. Knott, 418 Mass. 704, 640 N.E.2d 109 (1994) (declaratory judgment action to determine whether an easement existed in which the court asked "whether there were facts within the Land Court

---

[15] An assurance fund has been established from the payment at the time of registration of one-tenth of 1 percent of the assessed value of the land.  Sections 99-103 of Mass. Gen. Laws ch. 185 governs actions for compensation brought in the Superior Court by those, "who, without negligence, sustains loss or damage 'by reason of any error, omission, mistake or misdescription' in a certificate of title. . . ." See REAL ESTATE TITLE PRACTICE IN MASSACHUSETTS at § 15.2.5 (citing Overly v. Treasurer & Receiver Gen., 344 Mass. 188, 194-95 (1962)).

registration system available at time of purchase which would lead to the discovery that property was subject to an encumbrance even if the encumbrance was not listed on the certificate of title), *with* <u>Sullivan v. Kondaur Capital Corp.</u>, 85 Mass. App. Ct. 202, 7 N.E.3d 1113 (2014), *review denied,* 469 Mass. 1104 (2014) (permitting mortgagors following foreclosure of registered land to contest interest of mortgagees in the mortgage at the time of the foreclosure sale and holding that the assignment of mortgage failed to show authority of individual executing the assignment).

The court in <u>Mbazira I</u>, and <u>Mbazira II</u>, as well as in courts in other jurisdictions with Torrens Systems, hold that registration does not provide constructive notice to bankruptcy trustees of mortgages with defective acknowledgments. *See, e.g.*, <u>Mbazira I</u>, 518 B.R. at 21; <u>Mbazira II</u>, Slip op. at 13; <u>Burks v. Deutsche Bank Nat'l Trust Co. (In re Goheen)</u>, 490 B.R. 730 (Bankr. S.D. Ohio 2012), *aff'd*, No. 10-16427, 2012 WL 2709802 (S.D. Ohio July 6, 2010). This Court is persuaded by the rationales set forth in <u>Mbazira I</u> and <u>Mbazira II</u> with respect to registered land and predicts the Supreme Judicial Court would reach the same result.

The logic of the <u>Mbazira</u> decisions is straightforward. In the first place, under Massachusetts law, a party who has constructive notice of an outstanding title or right is not a bona fide purchaser. *See* <u>Alvarez v. Figueiredo</u>, No. 10 SBQ 02508 03–001(JCC), 2013 WL 1223490 (Mass. Land Ct. Mar. 26, 2013), *aff'd*, 85 Mass. App. Ct. 1108, 5 N.E.3d 3 (2014); <u>Colony of Wellfleet, Inc. v. Harris</u>, 71 Mass. App. Ct. 522, 883 N.E.2d 1235 (2008), *review denied*, 451 Mass. 1106, 888 N.E.2d 954 (2008); *see also* Mass. Gen. Laws ch. 185, § 114.[16] In

---

[16] Section 114 of ch. 185 provides:

Alvarez, the Land Court set forth the following:

> In order for a certificate holder to merit the protections of § 114 the title-holder must be a "good faith purchaser" and must not have actual knowledge of the claimed unregistered interest. Commonwealth Electric Company v. MacCardell, 450 Mass. 48, 51 (2007), citing Calci v. Reitano, 66 Mass. App. Ct. 245, 249 (2006). Furthermore, a certificate holder will not be deemed a "good faith purchaser" if inspection of the information contained on certificates in the registered property's chain of title, including other certificates of title, documents or plans *which are referenced on existing certificates of title for the land, conducted prior to submitting her deed for registration, would have revealed a prior interest or encumbrance.* Jackson v. Knott, 418 Mass. 704, 711 (1994); *See also,* Colony of Wellfleet, Inc. v. Harris, 71 Mass. App. Ct. 522, 526 (2008) (defendant was not a purchaser in good faith where she had constructive notice that the seller's express corporate authority to sell the property had lapsed at the time of sale by virtue of the details listed in detail on the face of the certificate of title concerning that corporate authority).

2013 WL 1223490 at *5 (emphasis supplied).[17]

---

> No erasure, alteration or amendment shall be made upon the registration book after the entry of a certificate of title or of a memorandum ... except by order of the court. A registered owner or other person in interest may apply by motion to the court upon the ground that . . . any error or omission was made in entering a certificate or any memorandum thereon . . . or upon any other reasonable ground; and the court may hear and determine the motion after notice to all parties in interest, and may order the entry of a new certificate, the entry or cancellation of a memorandum upon a certificate ... but this section shall not authorize the court to open the original judgment of registration, and nothing shall be done or ordered by the court which shall impair the title or other interest of a purchaser holding a certificate for value and in good faith, or his heirs or assigns, without his or their written consent.

Mass. Gen. Laws ch. 185, § 114. *See also* Mass. Gen. Laws ch. 185, § 46 ("[A] purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate [and others not relevant here]."); Mass Gen. Laws ch. 185, § 54 ("[C]ertificates of title are 'conclusive as to all matters contained therein,' except as otherwise provided in the statute.).

[17] In Colony of Wellfleet, Inc., the trial judge found that the defendant Harris was not protected from the provisions of § 114 because she was not a "purchaser in good

Like recorded land, registered land may be encumbered. Sections 57 and 67 of ch. 185

permit registered land to be, among other things, conveyed and mortgaged.  Section 57

provides:

> [N]o deed, mortgage or other voluntary instrument, . . . purporting to convey
> or affect registered land, shall take effect as a conveyance or bind the land, but
> shall operate only as a contract between the parties, and as evidence of
> authority to the recorder or assistant recorder to make registration. The act of
> registration only shall be the operative act to convey or affect the land, and in
> all cases the registration shall be made in the office of the assistant recorder for
> the district or districts where the land lies.

Mass. Gen. Laws ch. 185, § 57.  Similarly, section 67 provides:

> The owner of registered land may mortgage it by executing a mortgage deed.
> Such deed may be assigned, extended, discharged, released in whole or in
> part, or otherwise dealt with by the mortgagee by any form of deed or

---

faith." 71 Mass. App. Ct. at 526 (footnote omitted).  Accordingly, it concluded that the
Land Court was authorized to cancel the certificate of title. <u>Id.</u>  The court observed:

> The Supreme Judicial Court has held that "the statutory scheme set out in
> G.L. c. 185 does not protect all purchasers in every circumstance . . . [and]
> anyone who seeks the protection of G.L. c. 185 must fulfil [sic] his or her
> obligation to 'investigate further other certificates of title, documents, or
> plans in the registration system' that are referenced on existing certificates
> of title for the land to be purchased. . . . The failure to fulfil [sic] that
> obligation need not be fraudulent for the purchaser to lose his or her claim
> to certainty of title." <u>Doyle v. Commonwealth</u>, 444 Mass. 686, 692–693, 830
> N.E.2d 1074 (2005). In the case at bar, Harris did not fulfil [sic] this
> requirement. The authority granted to Frazier by the vote was listed on the
> memoranda of encumbrances and it would have been clear that Frazier's
> authority to sell lots on behalf of the Colony had lapsed more than a year
> prior to the conveyance to Harris. Because Harris at least had constructive
> knowledge of the error, she was not a purchaser in good faith, and her case
> falls under the rationale of <u>Doyle</u>.

<u>Colony of Wellfleet, Inc.</u>, 71 Mass. App. Ct. at 526 n.4.

instrument sufficient in law for the purpose. But such mortgage deed, and all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered, and shall take effect upon the title only from the time of registration.

Mass. Gen. Laws ch. 185, § 67. Thus, a mortgage is perfected under the registered land system when it is noted on the Memorandum of Encumbrances associated with the certificate of title.[18] See Burks v. Deutsche Bank Trust Co. (In re Goheen), No. 10-16427, 2012 WL 2709802 at *3 (S.D. Ohio July 6, 2010) (referencing statutory provision similar to § 57).

Mortgages, like deeds, must be acknowledged prior to registration to provide notice. Mbazira I, 518 B.R. at 21-22.[19] Mass. Gen. Laws ch. 185, § 58 references the recording system for unregistered land. It provides:

Every conveyance, lien, attachment, order, decree, instrument or entry affecting registered land, *which would under other provisions of law, if recorded, filed or entered in the registry of deeds, affect the land to which it relates*, shall, if registered, filed or entered in the office of the assistant recorder of the district where the land to which such instrument relates lies, *be notice to all persons from the time of such registering, filing or entering.*

---

[18] As noted above and in Mbazira, the registration of a mortgage does not initiate a new adjudication of the status of the tile; rather the mortgage is entered on a memorandum of encumbrances. 518 B.R. at 20 (citing Mass. Gen. Laws ch. 185, § 68).

[19] In Mbazira, the court noted:

Unlike the recorded land system, there is no express requirement in the statutory provisions governing registered land that a deed must be acknowledged as a prerequisite to registration. Indeed, Chapter 185 only expressly mandates three documents be acknowledged: (1) a power of attorney for any person procuring land for another; (2) a revocation of such a power of attorney; and (3) a written instrument withdrawing land from the registration system.

518 B.R. at 21 (footnote omitted). It concluded, however, that acknowledgment of a mortgage is required, citing Mass. Gen. Laws ch. 185, § 58.

30

Mass. Gen. Laws ch. 185, § 58 (emphasis supplied).  Because § 58 references the recording

system, it incorporates the filing standards for recorded land included in Mass. Gen. Laws

ch. 13, §§ 29 and 30[20] into the land registration system "as the condition for the act of

registration to be notice to third parties," *see* Mbazira I, 518 B.R. at 22; Mbazira II, 2015 WL

1543908  at *6.[21]   Indeed, the Massachusetts Land Court has issued Guidelines that require

---

[20]  Mass. Gen. Laws ch. 183, § 29, which applies to recorded land, provides, in
pertinent part: "No deed shall be recorded unless a certificate of its acknowledgment or
of other proof of its due execution, made as hereinafter provided, is endorsed upon or
annexed to it, and such certificate shall be recorded at length with the deed to which it
relates. . . ." Mass. Gen. Laws ch. 183, § 30 provides in pertinent part: "The
acknowledgment of a deed or other written instrument required to be acknowledged
shall be by one or more of the grantors or by the attorney executing it."

[21]  In Mbazira II, the court stated the following with respect to § 58:

Put more simply, if an instrument would legally affect land if recorded in
the registry of deeds, it will provide constructive notice to all persons if
registered. In Mbazira I, I concluded that this affirmative pronouncement
implied the negative—that instruments that will not legally affect land if
recorded will not be notice to all persons if registered—and thus
incorporated the filing standards for recorded land into the registered land
system. Therefore, because recordation in the registry of deeds requires a
certificate of acknowledgment, and a deed which has been improvidently
admitted to the registry without being duly acknowledged does not
operate as constructive notice, it necessarily follows that a mortgage with a
materially defective acknowledgment is not notice to all persons if
registered.

. . . the First Mortgage, though accepted for registration, was not notice to
all persons in light of the undisputed material defects in the
Acknowledgment. . . . Mass. Gen. Laws ch. 185, § 58 precluded an assertion
that the notation of the First Mortgage on the Certificate of Title could
provide better notice of the First Mortgage than the instrument itself. . . .

 . . . [A] a contrary ruling would effectively mean that registered mortgages
do not require an acknowledgement, the very proof that the mortgagor
validly executed the encumbrance appearing on the certificate. Such a

31

acknowledgments on mortgages with reference to Mass. Gen. Laws ch. 183, § 29 ("No deed

shall be recorded unless a certificate of its acknowledgment or of the proof of its due

execution . . .  is endorsed upon or annexed to it, and such certificate shall be recorded at

length with the deed to which it relates. . ."). Guideline 1, "Acknowledgments: Requirements

provides in pertinent part:

> The following documents must be acknowledged in order to be recorded:
>
> 1.) Deeds (excepting conveyances from the United States) - *see* G.L. Chapter
> 183 § 29.  Included in this category, based on the broad definition of deed, are
> easement deeds, *mortgage deeds*, deeds of trust, release deeds found in
> boundary line agreements, leases, notices of leases, options to purchase,
> options to lease, assignments of mortgages, collateral assignments of
> mortgages and collateral assignments of leases.

*See* Commonwealth of Massachusetts Land Court Guidelines on Registered Land, 1 (Rev.

Feb. 27, 2009), http:// www. mass. gov/ courts/ docs/ courts- and- judges/ courts/ land-

court/ guidelines- registered- land. pdf (emphasis supplied).  Although the Guidelines do

not have the force of a statute, they provide strong evidence of what the Land Court

considers essential under § 58 for "notice to all persons from the time of such registering,

filing or entering," as opposed to the act of registration.

In further support of this interpretation, in <u>Zona v. Zona</u>, No. 22902-S-2005-06-001,

2008 WL 97425 (Mass. Land Ct. Jan. 9, 2008), the Land Court specifically referenced Mass.

---

> practice would hardly make 'the title to land . . . readily and reliably
> ascertained."

2015 WL 1543908  at *6 (footnotes omitted).

Gen. Laws ch. 183, §§ 4, 29 and 30, in discussing the absence of an acknowledgment of the

holder of a life estate on a deed that purported to transfer or eliminate the life estate.  The

facts in <u>Zona</u> are as follows:

> Prior to registration of the disputed deed, title stood in the name of the defendant William Zona, subject to a life estate in plaintiff. Following the registration of the disputed deed, the District issued certificate of title No. 118499 which certified title in William Zona free of plaintiff's life estate. At the same time William Zona registered the disputed deed, he executed and acknowledged a mortgage to the bank securing a note in the original principal amount of $180,000. That mortgage is Document No. 638127, and was not joined in in any way by plaintiff or anyone other than William Zona. Title to the premises since has passed to the defendants Zona as tenants by the entirety by virtue of a deed from defendant William Zona to himself and defendant Mary Gail Zona, as tenants by the entirety. That deed is Document No. 678700, dated April 6, 2004 and filed with the District on the following day. The defendants Zona gave a mortgage dated April 6, 2004 to the bank securing a note in the original principal amount of $242,000; that mortgage, in the execution and acknowledgment of which plaintiff took no part, was registered with the District April 7, 2004 as Document 678701.

2008 WL 97425 at *1.  The plaintiff filed a so-called S-petition, invoking the equitable power

of the Land Court to rescind the deeds previously registered and to make equitable

adjustments to the mortgage.  The mortgagee moved for summary judgment asking the

court to rule, as a matter of law, that the disputed deed was acknowledged in the legally

required manner.  The court denied the bank's motion for partial summary judgment and

granted the plaintiff's motion for partial summary judgment, ruling that the

acknowledgment of the disputed deed by the defendant did not satisfy the acknowledgment

requirement of Mass. Gen. Laws ch. 183, §§ 29 and 30. <u>Id.</u> at *5. The <u>Zona</u> decision is

significant precedent for ruling that defective acknowledgments are not validated by

acceptance for registration or notation by the Land Court record.

In the absence of a proper acknowledgment, *see* <u>In re Kelly</u>, 498 B.R. at 400-01, the Mortgage, though accepted for registration, did not provide notice to third parties. <u>Mbazira I</u>, 518 B.R. at 21-22. *See also* <u>Petrozzi v. Peninsula Council, Inc.</u>, No. 07 MISC. 349279(GHP), 2011 WL 1459694 at *16 (Mass. Land Ct. Apr. 14, 2011).

Because the defective acknowledgment, which is virtually identical to that found to be defective in <u>In re Kelley</u>, 498 B.R. 392 (B.A.P. 1st Cir. 2013), the holdings in cases such as <u>Kelley</u>, <u>Agin v. Mortg. Elec. Registration Sys. (In re Bower)</u>, 10–10993–WCH, 2010 WL 4023396 (Bankr. D. Mass. Oct. 13, 2010), and <u>Agin v. Mortg. Elec. Registration Sys. (In re Giroux)</u>, No. 08–14708, 2009 WL 1458173 (Bankr. D. Mass. May 21, 2009), *aff'd*, <u>Mortg. Elec. Registration Sys. v. Agin</u>, No. 09–CV–10988, 2009 WL 3834002 (D. Mass. Nov. 17, 2009), become relevant and dictate the outcome of the case. Courts in those decisions ruled that a material defect in an acknowledgment does not provide constructive notice to subsequent purchasers. In other words, a mortgage with a materially defective acknowledgment cannot provide constructive notice of the encumbrance. <u>Mbazira I</u>, 518 B.R. at 23; <u>Mbazira II</u>, Slip op. at 14. Thus, pursuant to Mass. Gen. Laws ch. 185, §§ 57 and 67, the Mortgage operates only as a contract between the parties to it and may be avoided by the Trustee.

HSBC emphasizes the existence of the Assignment on the Memorandum of Encumbrances, arguing that it gave the Trustee constructive notice of the Mortgage, thereby depriving him of his status as a good faith purchaser under 11 U.S.C. § 544(a)(3). In <u>Boivin v. Beckman</u>, 79 Mass. App. Ct. 1103 (2011), *review denied,* 459 Mass. 1110 (2011), the court noted that it was well settled that "the holder of a certificate of title taken 'for value and in

good faith' holds 'free from all encumbrances except those noted on the certificate.'" Id. at

* 1 (citing Mass. Gen. Laws ch. 185, § 46 and Commonwealth Elec. Co. v. MacCardell, 66

Mass. App. Ct. 646, 648 (2006)).  If, as in this case, a mortgage provides no constructive notice

to the Trustee, it must be considered to be outside the chain of title, and its appearance on

the Memorandum of Encumbrances must be deemed not to exist.  Cf. In re Nistad, 2012 WL

272750 at *4 ("[T]he Mortgage should not have been recorded. The effect is as if the

Mortgage had never been recorded, and thus the Trustee does not have constructive

notice.").  Viewed in that light, the subsequent Assignment cannot cure the defect and

provide constructive notice.  See In re Woodman, 497 B.R. 668 (Bankr. D. Mass. 2013)

(Chapter 7 trustee did not have constructive notice of and could avoid a mortgage where

mortgage and assignment were mistakenly recorded with the registry of deeds instead of

with the Land Court registry and nothing in the certificate of title made a reference to them).

Thus, the relevant exception noted by the Supreme Judicial Court in Jackson v. Knott, 418

Mass. 704, 711, 640 N.E.2d 109, 113 (1994) (namely that "[i]f an easement is not expressly

described on a certificate of title, an owner, in limited situations, might take his property

subject to an easement at the time of purchase . . . there were facts described on his certificate

of title which would prompt a reasonable purchaser to investigate further other certificates

of title, documents, or plans in the registration system . . . ." 418 Mass. at 711 (emphasis

supplied)) would not apply.[22] This is so, because, hypothetically, the Mortgage would not

provide notice to the Trustee on the Memorandum of Encumbrances, even if the Assignment

---

[22] The other exception, "if the purchaser has actual knowledge of a prior
unregistered interest," is inapplicable in view of the provisions of 11 U.S.C. § 544(a).

35

would require a reasonable purchaser to examine the documents on the Memorandum of

Encumbrances the Mortgage would not be found.  Indeed, the Supreme Judicial Court in

Knott stated:

> Bemis and Knott [the defendants] were *obligated to review only documentation*
> *within the registration system* because to require a purchaser to investigate facts
> not documented within that system would be directly contrary to the
> purposes of the Land Registration Act. Kozdras v. Land/Vest Properties, Inc.,
> 382 Mass. 34, 43-45, 413 N.E.2d 1105 (1980). The purchaser need not look
> beyond the decree, for all facts prior to the decree, including the petition for
> registration itself, are irrelevant. *See* Butler v. Haley Greystone Corp., 347
> Mass. 478, 484-485, 198 N.E.2d 635 (1964).

Knott, 418 Mass. at 711 (emphasis supplied).  In addition, as the court in Woodman noted,

> The land registration statute establishes a perfection regime much like the
> Uniform Commercial Code's requirement to perfect security interests in
> personal property by filing financing statements. As between Citi [the
> mortgagee] and the Woodmans the mortgage was a fully enforceable contract.
> Jackson, 418 Mass. at 711, 640 N.E.2d 109. Citi had the right at any time to
> "perfect" its mortgage lien on the Woodmans' home by filing its mortgage and
> assignment with the Land Court registry. The trustee now seeks to cut off that
> right and appropriate it for the bankruptcy estate.

497 Mass. at 674-75.  The analogy to the Uniform Commercial Code made by the court in

Woodman is apt.  Because the acknowledgment was defective and the Mortgage provided

no notice to third parties, it was "unperfected." The registration of the Assignment cannot

cure the defect in the acknowledgment or serve to make the Mortgage enforceable other than

between the parties to it.  *See* In re Nistad, 2012 WL272750 at *5 (although an assignment and

order of notice were validly executed and properly recorded, they did not provide the

trustee with constructive notice of the mortgage's existence because they are outside the

chain of title); *see also* Rhiel v. Central Mortg. Co. (In re Kebe), 469 B.R. 778, 788 (Bankr. S.D.

36

Ohio 2012)("[I]f a mortgage is defectively executed in contravention of Ohio Revised Code

§ 5301.01, the reference to it in an assignment of mortgage does not serve as constructive

notice to a subsequent purchaser.").[23]  Moreover, under U.S. Bank Natal Ass'n v. Ibanez, 458

Mass. 637, 941 N.E.2d 40 (2011), a foreclosing mortgagee must demonstrate an unbroken

chain of assignment, a circumstance that HSBC cannot establish because the first line in the

chain does not exist.  Therefore, the Assignment cannot perfect the Mortgage.  While the

decisions in Nistad and Kebe did not involve registered land, the Court is persuaded by their

reasoning in view of Knott.

In Mbazira II, the court reached the same conclusion, stating:  "While the First

Mortgage was indisputably accepted for registration, a closer reading of Jackson v. Knott

with an eye towards the entire statutory scheme compels the conclusion that inquiry notice

---

[23] The court stated:

Applying the law of other states, federal courts have, consistent with
Thames [Thames v. Asia's Janitorial Serv., Inc., 81 Ohio App.3d 579, 611
N.E.2d 948, 953 (1992)], held that an assignment—even if it was properly
executed and recorded—does not provide constructive notice of a
defectively executed mortgage. See Stern v. Cont'l Assurance Co. (In re
Ryan), 851 F.2d 502, 511–12 (1st Cir. 1988); DeGiacomo v. CitiMortgage, Inc.
(In re Nistad), 2012 WL 272750, at *4 (Bankr. D. Mass. Jan.30, 2012); Lyon v.
Franklin Mortg. Funding (In re Shannon), 343 B.R. 585, 588–89 (Bankr. E.D.
Ky. 2006); Wash. Mut. Home Loans v. Yearwood (In re Yearwood), 318 B.R.
227, 228–29 (Bankr. M.D. Ga. 2004).

469 B.R. at 788 n.14.

should not apply, at least in an avoidance action under 11 U.S.C. § 544(a)(3), to a registered

instrument that is incapable of giving notice of itself. In such a circumstance, the bankruptcy

court must treat the registered instrument as undiscoverable."   2015 WL 1543908  at *8

(footnote omitted).   Citing Mass. Gen. Laws ch. 185, § 46, which provides that bona fide

purchasers of registered land take "free from all encumbrances except those noted on the

certificate," the court in Mbazira II, stated:

> In contrast, applying inquiry notice to an instrument that cannot give
> constructive notice of itself, as U.S. Bank would have me do, does not carry the
> same logical force. Indeed, at first blush, the argument feels circuitous—if we
> are blind to the First Mortgage and its notation on the Certificate of Title, how
> can the subsequent Assignment or Order of Notice help us find it? This recalls
> two points raised earlier about the concept of inquiry notice: (1) it is not a
> separate form of notice, but a corollary to both constructive and actual notice;
> and (2) in an avoidance action under 11 U.S.C. § 544(a)(3), the court must not
> blur the lines between the two and impute actual notice to the plaintiff. In a
> scenario where, as in Jackson v. Knott, a notation on the certificate of title is
> simply inadequate, but facts on the certificate of title, which are notice to all
> persons, would compel a purchaser to search for and find a properly
> acknowledged registered encumbrance that is also be notice to all persons,
> inquiry notice would appear to be a species of constructive notice. Here,
> however, even if the initial facts that would prompt an inquiry stem from the
> Assignment and Order of Notice and are entitled to constructive notice, the
> discovery of the First Mortgage could only be based  on actual notice in light
> of the defective Acknowledgment, rendering any inquiry notice a species of
> actual notice to which Debtor is not bound.

Mbazira II, 2015 WL 1543908 at *9 (footnotes omitted).   This Court agrees with Judge

Hillman's rationale.

**VI. CONCLUSION**

In view of the foregoing, the Court shall enter orders denying the Motions for

Summary Judgment with respect to Counts II and II of the Trustee's Complaints.  Because

of the absence of any dispute as to the material facts, the Court shall issue orders HSBC to

show cause why it should not enter summary judgment in favor of the Trustee on Counts

I and II of his Complaints pursuant to Fed. R. Civ. P. 56(f).  The Certification Motions are

denied.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated April 29, 2015